[Cite as *State v. Pitts*, 2020-Ohio-5494.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                          :            APPEAL NO. C-190418
                                                     TRIAL NO.    18CRB-24765
     Plaintiff-Appellee,           :

     vs.                          :

GERRY PITTS,                            :            *O P I N I O N.*

     Defendant-Appellant.          :


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  December 2, 2020


*Andrew Garth,* Interim City Solicitor, *William T. Horsley,* Chief Prosecuting
Attorney, and *Scott Crowley,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*,
Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} On September 6, 2018, defendant-appellant Gerry Pitts was charged with assault in violation of R.C. 2903.13. At his jury trial, he asserted a claim of defense of another—specifically his little brother "Z." He was found guilty on April 4, 2019, and subsequently sentenced. He has appealed his conviction, arguing in two assignments of error that (1) the trial court erred in applying the wrong version of Ohio's self-defense law, and (2) his conviction was against the manifest weight of the evidence.

{¶2} For the reasons discussed below, we sustain the first assignment of error and remand the cause for a new trial. Our disposition of the first assignment of error renders the second assignment of error moot.

### *Factual Background*

{¶3} William Turner testified that on September 6, 2018, he was driving down Thompson Street in Hamilton County, Ohio, when he saw a small child in the street. A passing driver told Turner that he thought the child lived in the "yellow house." Turner put the child in his truck and circled the block looking for a yellow house, but did not see one. He returned to his house where he told his fiancée, Cassandra, about the child. He came back outside with Cassandra and called 911 on his cell phone.

{¶4} While he was on the phone with 911, Turner saw Pitts run out of his house and into the middle of the street. Pitts yelled "that's my little brother!" and ran up to Turner. Turner testified that Pitts chest bumped him twice. The child, who turned out to be Pitts's brother, Z, had been sitting in the driver's seat, but moved to

the passenger seat, away from Turner and Pitts, when Pitts ran toward him. Turner told Pitts to go get his mother, so Pitts ran down the street, waved down his family, and they all ran up the street to where Turner was standing next to his truck. Turner testified that Pitts chest bumped him again, causing him to disconnect the 911 call. Pitts's mother, Gwen, pulled Z out of the truck. As Turner was trying to explain to her what happened, Pitts punched him from behind. Turner called 911 again, and the police came.

{¶5} Cassandra's testimony corroborated Turner's. She testified that Turner was talking to Gwen when Pitts came around behind Turner and punched him in the face.

{¶6} Pitts testified that a neighbor came to the house and told his sister that she saw a man in a pickup truck pick up Z and drive away. Pitts testified that he overheard the conversation, and, fearing that Z had been kidnapped, ran outside. He heard Z crying, saw him in a pickup truck up the street, and ran toward where Turner was standing next to the truck. Pitts testified that he told Turner that Z was his brother. He stated that he tried to get to Z, but Turner kept pushing him away. Pitts ran back home and told Gwen that he had found Z. Then, he, Gwen, and his sister Aaliyah, ran back up the street to Turner's truck. Pitts testified that Turner pushed him away once again. Pitts claimed he then punched Turner out of fear for Z's safety. Aaliyah testified that as Pitts was trying to pull Z out of the truck, Turner pushed Pitts, and then Pitts punched him.

{¶7} The state played audio recordings of Turner's two 911 calls, but the recordings do not shed much light on how the confrontation occurred.

*First Assignment of Error*

{¶8}    In his first assignment of error, Pitts contends that the trial court should have applied the newly-enacted version of R.C. 2901.05(B)(1) to his affirmative defense of defense of another.

{¶9}    Whether the trial court erred in failing to apply the new law to Pitts's trial is a legal issue we review de novo.  *See State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 8.

{¶10}   The General Assembly altered Ohio's self-defense, defense of another, and defense of residence statute when it enacted 2017 Am.Sub.H.B. No. 228 ("H.B. 228"), which amended R.C. 2901.05(B)(1).  Prior to March 28, 2019, those defenses were affirmative defenses that the defendant had the burden of proving by a preponderance of the evidence.  Effective March 28, 2019, the burden of proof was realigned. R.C. 2901.05 (B)(1), as amended by H.B. 228, states:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

The General Assembly amended R.C. 2901.05 to shift the burden of persuasion: "the prosecution [must] disprove at least one of the elements of self-defense beyond a reasonable doubt." *State v. Williams*, 1st Dist. Hamilton No. C-190380, 2020-Ohio-

5245, ¶ 7, quoting *State v. Petway*, 2020-Ohio-3848, ___N.E.3d___, ¶ 38 (11th Dist.). "However, the amended statute does not affect the burden of production—it remains with the defendant. Just as before, subsection (A) imposes upon the defendant '[t]he burden of going forward with the evidence of an affirmative defense.'" *Williams* at ¶ 7, quoting R.C. 2901.05(A).

{**¶11**} The state argues that because R.C. 2901.05(B)(1) does not expressly include retroactive language, the new law cannot apply to conduct that occurred before its effective date. The state contends that absent a clear declaration of retroactivity, the statute only applies prospectively. *See Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 106, 522 N.E.2d 489 (1988); R.C. 1.48.

{**¶12**} Multiple appellate districts have held that H.B. 228 does not apply in cases where the commission of the offense *and* the trial occurred before March 28, 2019. *See State v. Brooks*, 5th Dist. Richland No. 2019 CA 0104, 2020-Ohio-4123, ¶ 39 (listing cases from other districts).

{**¶13**} As of the date of this opinion, only the Second, Fifth, Eleventh, and Twelfth Districts have decided the issue presented in this case: whether the burden-shifting changes made to R.C. 2901.05 apply to offenses that were committed before the effective date of the statute, but tried after the effective date. The districts are split.

{**¶14**} On June 1, 2020, the Twelfth District held that no retroactivity analysis is necessary because H.B. 228 is not a retroactive statute—it only "applies prospectively to *trials*." (Emphasis in original.) *State v. Gloff,* 2020-Ohio-3143, ___N.E.3d___, ¶ 23 (12th Dist.). In *Gloff*, the court found that because the defendant's trial lasted from March 26, 2019, to March 29, 2019, he was entitled to a

self-defense jury instruction that complied with H.B. 228. *Id.* at ¶ 29. The court determined that H.B. 228 is not a retroactive law because it "focuses on when the trial is held, not when the offense was committed." *Id.* at ¶ 22. The court held, "The pertinent amendment does not concern the conduct giving rise to the offense but relates to the applicable burden of proof for the affirmative defense of self-defense." *Id.* at ¶ 23.

{¶15} On July 20, 2020, the Twelfth District reaffirmed its holding in *Gloff.* *State v. Lewis,* 2020-Ohio-3762, ___N.E.3d___, ¶ 26 (12th Dist.).

{¶16} On August 18, 2020, the Fifth District disagreed with the Twelfth District's holdings in *Gloff* and *Lewis.* It found that the "at the trial" language was not a "directive regarding the applicability of the statute, rather, it is a reference as to the time and place the affirmative defense evidence must be presented that tends to support that the accused person used the force in self-defense." *Brooks*, 5th Dist. Richland No. 2019 CA 0104, 2020-Ohio-4123, at ¶ 42. The court determined that the legislature "has not indicated, expressly or otherwise, that H.B. 228 is to be retroactively applied." *Id.* at ¶ 37. Thus, the court held that the burden-shifting changes to the self-defense statute could not be applied to offenses that were committed before the effective date of the statute, but tried after the effective date. *Id.* at ¶ 43.

{¶17} On September 21, 2020, the Eleventh District, without citing *Gloff* or *Brooks*, held that "[s]ince the date of the offense preceded the enactment of the amended statute, [the defendant] would not have been able to take advantage of the [new law] if the court had delayed her trial." *State v. McEndree*, 2020-Ohio-4526, ___N.E.3d___, ¶ 46 (11th Dist.). The court further held, "[I]nasmuch as the

amended self-defense statute creates a new burden of proof on the state, we find it substantive and cannot constitutionally be applied retroactively." (Emphasis deleted.) *Id.* at ¶ 44.

{¶18} The Second District weighed in on October 9, 2020, in a two-to-one decision, agreeing with the Fifth District's holding in *Brooks.* The court held:

> The language only reflects that the H.B. 228 changes, whenever effective, are applicable to trials at which "there is evidence presented that tends to support that the [defendant] used * * * force in self-defense * * *." The language simply does not address whether application of H.B. 228 is required at a trial involving an offense occurring before March 28, 2019 but coming to trial on or after that date.

(Citation omitted.) *State v. Irvin*, 2d Dist. Montgomery No. 28495, 2020-Ohio-4847, ¶ 24, quoting R.C. 2901.05(B)(1). In his dissent in *Irvin*, Judge Froelich stated that he agreed with the Twelfth District's interpretation of the applicability of H.B. 228. *Id.* at ¶ 56. And for the following reasons, so do we.

{¶19} The plain language of H.B. 228 indicates that the new standard for self-defense, defense of another, and defense of residence is to be applied prospectively to trials. The H.B. 228 amendment focuses on when the trial is held, as opposed to when the offense was committed. *Gloff*, 2020-Ohio-3143, ____N.E.3d____, at ¶ 22-23.

{¶20} Just because the offense may have been committed before the law changed does not automatically make H.B. 228 a retroactive law. As discussed in *Landgraf v. USI Film Prod.*, 511 U.S. 244, 275, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994):

A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.

(Citations omitted.) *Id.* at 269-270. "[T]he prohibition against retroactive laws 'is a bar against the state's imposing new duties and obligations upon a person's past conduct and transactions, and it is a protection for the individual who is assured that he may rely upon the law as it is written and not later be subject to new obligations thereby.' " *E. Ohio Gas Co. v. Limbach* 26 Ohio St.3d 63, 65-66, 498 N.E.2d 453 (1986), quoting *Lakengren, Inc. v. Kosydar*, 44 Ohio St.2d 199, 201, 339 N.E.2d 814 (1975).

{¶21} We must, therefore, examine what it is that H.B. 228 does. Does it attach new legal consequences to events completed before its enactment or impose new duties and obligations upon a person's past conduct and transactions? No, it does not. H.B. 228 does not create nor dismantle the affirmative defense of defense of another, nor does it change the elements of proving defense of another. *See Landgraf* at 270 (changing the elements would have violated the "familiar considerations of fair notice, reasonable reliance, and settled expectations"). Rather,

it changes the burden of proof when asserting defense of another. Therefore, it affects the manner and procedure by which a jury arrives at its verdict.

**{¶22}** "Laws of a remedial nature providing rules of practice, courses of procedure, or methods of review are applicable to any proceedings conducted after the adoption of such laws." *EPI of Cleveland, Inc. v. Limbach*, 42 Ohio St.3d 103, 105, 537 N.E.2d 651 (1989), quoting *State ex rel. Holdridge, v. Indus. Comm.* 11 Ohio St.2d 175, 228 N.E.2d 621 (1967) (the court found that where the amendment at issue affected "only the manner of arriving at a fact conclusion, upon which the substantive law would operate, it was itself procedural or remedial rather than substantive.").

**{¶23}** As stated by the Court in *Landgraf*, "Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Landgraf*, 511 U.S. at 275, 114 S.Ct. 1483, 128 L.Ed.2d 229. "Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." *Id.*; *accord Buckeye Candy & Tobacco Co. v. Limbach*, 28 Ohio St.3d 40, 41, 501 N.E.2d 1202 (1986) ("A procedural law is generally considered to be applied prospectively when it is applied to proceedings in which the particular procedural aspect regulated by the law has not yet occurred").

**{¶24}** Recently, the Florida Supreme Court held that a statutory amendment that shifted the burden of proof to the prosecution at a self-defense immunity hearing was a procedural change in the law. *Love v. State,* 286 So. 3d 177 (Fla. 2019). Therefore, the court held that the amendment applies to all immunity

hearings that take place after the amendment's effective date, even if the offense occurred before the effective date. *Id.* at 188. The court stated, "The mere application of a new procedural statute * * * in a pending case is not a retroactive application." *Id.* at 189. The court went on to explain that this "does not mean that a new procedure applies in all pending cases. Rather the 'commonsense' application of a new procedure generally 'depends on the posture of the particular case.' " *Id.* at 187-188, quoting *Landgraf* at 275, fn. 29. Thus, in *Love*, the court found that if the immunity hearing had taken place before the statute's effective date, the defendant would not be entitled to a new immunity hearing under the new law. *Id.* at 180 (holding that "there is no indication the Legislature intended the statute to undo pre-effective-date immunity hearings").

{¶25} H.B. 228 affects only the procedure to be followed in proving defense of another, and that "particular procedural aspect," the burden of proof at Pitts's trial, had not yet occurred when H.B. 228 became effective. *See Buckeye Candy & Tobacco Co.*, 28 Ohio St.3d at 41, 501 N.E.2d 1202; *Love* at 189. Therefore, even though Pitts punched Turner on September 6, 2018, the new procedure applies to his case because H.B. 228 went into effect on March 28, 2019, seven days before Pitts's jury trial began.

{¶26} For the reasons discussed above, the trial court erred in failing to instruct the jury in accordance with H.B. 228. The state does not argue that the trial court's error was harmless, and we decline to conduct a harmless-error analysis of our own volition. Accordingly, Pitts's first assignment of error is sustained.

### *Conclusion*

**{¶27}** Our disposition of the first assignment of error renders the second assignment of error moot, and so we decline to address it. The judgment is reversed and the cause remanded for a new trial.

**{¶28}** We note that the Second Appellate District in *State v. Irvin,* 2d Dist. Montgomery No. 28495, 2020-Ohio-4847, recognized the district split on this issue and sua sponte certified a conflict to the Ohio Supreme Court pursuant to Article IV, Section 3(B)(4) of the Ohio Constitution. *Id.* at ¶ 54. We likewise, pursuant to Article IV, Section 3(B)(4) of the Ohio Constitution, certify the same question:

**{¶29}** Do the burden-shifting changes made to R.C. 2901.05, through the passage of H.B. 228, apply to offenses that were committed before the effective date of the statute but tried after the effective date?

Judgment reversed and cause remanded.

**MYERS, P.J.,** and **BERGERON, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.